## IN THE UNITED STATES DISCTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **THE UNITED STATES OF AMERICA,** ) | CASE NO:  1:17CR00516-001 | |
| ) | | |
| Plaintiff, ) | **JUDGE CHRISTOPHER BOYKO** | |
| ) | | |
| vs. ) | | |
| ) | **SENTENCING MEMORANDUM** | |
| **DANA CAIN ,** ) | | |
| ) | | |
| Defendant. ) | | |
| ) | | |

    Now comes Defendant, through undersigned counsel and hereby submits the attached Sentencing Memorandum in the above referenced case.

    Respectfully submitted,

    *Steve Albenze*
Steve Albenze (0089558)
**The Albenze Law Group LLC**
124 Middle Ave. Suite 900
Elyria, Ohio 44035
(440) 523-1783
(440) 284-1736 (fax)

# SENTENCING MEMORANDUM

Defendant, DANA CAIN, by and through his attorney, STEVE ALBENZE, respectfully submits this memorandum for this Court's consideration in fashioning a sentence that is sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

## I. STATEMENT OF THE CASE

On or about March 30, 2017 a search warrant was executed upon the home of Defendant, Dana Cain, located at 7260 Avon Belden Rd., in North Ridgeville, Ohio. The search warrant was obtained as the result of the monitoring of file share software that showed the downloading of videos containing the subject matter of minors engaging in sexual activities. The search of the residence produced multiple computer devices, however police were unable to locate (1) one MacBook, on which they believed the contraband files to be located. Upon request, Defendant aided police by advising them of the location of the sought MacBook. Upon investigation, the Macbook did in fact contain the contraband videos.

Mr. Cain was arraigned in Municipal court and was able to make bond almost immediately. Upon being released, Defendant continued with his full time employment and began extensive therapy with Dr. Mraz to address the issues that lead to this behavior. The charges brought by the State of Ohio were dismissed in July of 2017. Despite this dismissal, Dana Cain continued to treat extensively with Dr. Mraz, where he excelled in his treatment. He also continued to volunteer at a local animal shelter in an attempt to give back to the community.

On or around November 15, 2017, Defendant Dana Cain, was made aware that Federal Charges had been filed. He voluntarily turned himself in to the FBI on November 16, 2017 and

fully cooperated with the investigation. Since that time, the Defendant has been detained on these charges.

## II. <u>SENTENCING GUIDELINES AND THEIR CRITICSIMS</u>

The advisory guideline range is one factor this Court considers in determining Dana Cain's sentence. See *Biddle*, *2014 U.S. Dist. LEXIS 143733* at *11 (citing 18 U.S.C. § 3553(a)). In this specific instance, however, the Guideline provisions applicable to Mr. Cain are uniquely flawed such that the resulting advisory guideline range does not warrant the same weight it might deserve in cases involving other Guideline provisions. This is particularly true here, where a number of the enhancements that technically apply to Mr. Cain have no rational bearing on his culpability.

The Guideline provisions applicable to Mr. Cain have been widely and repeatedly criticized by courts, scholars, and, most tellingly, the United States Sentencing Commission itself. *See, e.g United States v. Henderson, 649 F.3d 955, 963 (9th Cir. 2011)* (noting that "similar to the crack cocaine Guidelines, district courts may vary from the child pornography Guidelines, § 2G2.2, based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case."); *United States v. Dorvee, 616 F.3d 174, 184-188* (2d Cir. 2010) (stating that the child pornography "Guideline [ ] is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires," and engaging in an in-depth analysis of the various flaws, including the "irrationality" of certain enhancements); *United States v. Gorber, 624 F.3d 592, 609-10 (3d Cir. 2010); United States v. Diaz, 720 F. Supp. 2d 1039, 1041-1048 (E.D. Wis. 2010); United States v. Brasfield, 2011 U.S. Dist. LEXIS*

*96890 at \*7 (E.D. Wis. Aug. 29, 2011) (referring to § 2G2.2 as "a seriously flawed provision worthy of little deference" and citing substantial body of authority "explain[ing] these flaws in detail.") (citations omitted).*

A fundamental criticism that has led courts to give the provisions of § 2G2.2 little or no weight is the fact that unlike other components of the Guidelines, these provisions "did not result from careful study based in empirical analysis and national experience, but are the result of congressional mandates."  *Biddle, 2014 U.S. Dist. LEXIS 143733 at \*15 (emphasis added) (citing United States v. Huffstatler, 571 F.3d 620, 622-23 (7th Cir. 2009)).* Unfortunately, but not necessarily surprisingly, guidelines based primarily on the directives of individuals seeking to maintain elected office resulted in a sentencing scheme that produces unduly harsh guideline ranges for many offenders. Indeed, seventy percent of 639 district judges surveyed in 2010 indicated that the guideline ranges for possession of child pornography are too high, and sixty-nine sixty-nine percent considered the ranges for receipt of child pornography too high. *Grober, 624 F.3d at 606-07 (citing U.S. Sentencing Comm'n, Results of Survey of United States District Judges January 2010 through March 2010 ( June 2010).)*

This judicial condemnation is particularly damning given that only thirty percent of these same judges indicated that the guideline ranges for distribution offenses generally were too high.  *Id., at 607*. Thus, the strikingly high percentage of judges who indicated that the guideline ranges for possession and receipt of child pornography are too high is not simply the result of a judiciary that is somehow predisposed to be critical of lengthy guideline ranges in all child pornography related cases. Instead, it reflects an experienced-based awareness that the provisions related to non-production offenses are uniquely flawed. District court judges have reiterated their disapproval of § 2G2.2 in courtrooms across the United States. Indeed, since "United States v.

Booker , which made the guidelines 'effectively advisory' in 2005, there has been a steadily decreasing rate of sentences imposed within the applicable guidelines ranges in non-production cases. . . . to 32.7 percent in fiscal year 2011." United States Sentencing Commission Report to the Congress: Federal Child Pornography Offenses   (December 2012) ("Sentencing Commission Report"),  Executive  Summary  at  (ii)  (emphasis  added)  (available at http://www.ussc.gov/sites/default/files/pdf/news/congressionaltestimony-and-reports/sex-offense-topics/201212-federal-child-pornographyoffenses/Full_Report_to_Congress.pdf  (l ast accessed November 12, 2015).)

As the Sentencing Commission explained, "[t]hese sentencing data indicate that a growing number of courts believe that the current sentencing scheme in non-production offenses is overly severe for some offenders." Id. The Seventh Circuit has acknowledged this criticism of § 2G2.2 and recognizes the ability of the district courts to take that criticism into account when determining a defendant's sentence. See, *United States v. Price,  775 F.3d 828, 841 (7th Cir. 2014)* (affirming below guidelines sentence for possession and production offenses, acknowledging that the district court "exercised her discretion to consider the scholarly and judicial criticism of the guidelines for  child-pornography offenses," and explaining that "[w]e have said before that the concerns expressed in Dorvee 'can certainly be taken into account by district judges when exercising their  sentencing discretion under the now advisory guidelines.'") (citations and quotations omitted). The individual sentencing enhancements of § 2G2.2 have garnered particular criticism. Most of these enhancements, including several present in this case, have failed to evolve to reflect changes in and wide-spread use of technology.

Indeed, as this Court recently observed, "this guideline is arguably vulnerable to the criticism that the enhancements apply in nearly every case." *Lowe v. United States, 2015 U.S. Dist. LEXIS*

*33902 at \*7 (S.D. Ind. Mar. 18, 2015) (citing Price, 775 F.3d at 841)*. As a result, these enhancements "produce a sentence approaching the statutory maximum, even for an offender with no prior record, based solely on characteristics that are all but inherent to the crime of conviction, an approach fundamentally inconsistent with § 3553(a)." *Diaz, 720 F. Supp. 2d at 1042 (citing Dorvee, 604 F.3d at 95-96); see also Price, 775 F.3d at 841* ("§ 2G2.2 ... calls for the application of multiple enhancements that apply in almost every case, making inadequate distinctions between the worst offenders and those who are less dangerous.") (citing *Dorvee, 616 F.3d at 186-87); United States v. Burns, 2009 U.S. Dist. LEXIS 100642 at \*40 (N.D. Ill. Oct. 27, 2009)* ("These Guidelines are flawed not only because they are duplicative and draconian but most critically because they apply to almost all offenders, allowing no distinction between aggravated and less aggravated behavior.")

As the Sentencing Commission explained:

> Innovations in digital cameras and videography as well as in computers and Internetrelated technology, such as peer-to-peer ("P2P") file-sharing programs, have been used by offenders in the production, mass distribution (both commercial and noncommercial distribution), and acquisition of child pornography. These technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre that previously was not as widely circulated as it is today. As a result of such changes, entry-level offenders now easily can acquire and distribute large quantities of child pornography at little or no financial cost and often in an anonymous, indiscriminate manner. Several provisions in the current sentencing guidelines for non-production offenses-- in particular, the existing enhancements for the nature and volume of the images possessed, an offender's use of a computer, and distribution of images--originally were promulgated in an earlier technological era. Indeed, most of the enhancements, in their current or antecedent versions, were promulgated when offenders typically received and distributed child pornography in printed form using the United States mail. As a result, enhancements that were intended to apply to only certain offenders who committed aggravated child pornography offenses are now being applied routinely to most offenders.

*Sentencing Commission Report* at 312-313 (footnotes omitted).

To its credit, the Department of Justice ("DOJ") agreed with the Sentencing Commission's critique of these enhancements:

> [T]he Department agrees with the Commission's conclusion that advancements in technology and the evolution of the child pornography "market" have led to a significantly changed landscape--one that is no longer adequately represented by the existing sentencing guidelines. Specifically, we agree with the Report's conclusion that the existing Specific Offense Characteristics ("SOCs") in USSG § 2G2.2 may not accurately reflect the seriousness of an offender's conduct, nor fairly account for differing degrees of offender dangerousness. The current guidelines can at times under-represent and at times over-represent the seriousness of an offender's conduct and the danger an offender possesses.

*United States Department of Justice, Letter to the Honorable Patti B. Saris, Chair of the United States Sentencing Commission, 1 (Mar. 5, 2013)) ("DOJ Letter") (available at http://sentencing.typepad.com/files/doj-letter-to-ussc-on-cp-report.pdf )*

### III. PSR OFFENSE LEVEL COMPUTATIONS APPLIED TO THE CASE AT HAND

In the instant matter, the Defendant Dana Cain, received a total offense level of 32. This calculation was the result of the Base level Offense being 22, coupled with other criteria which raised the score. These criteria shall be addressed in order.

Two (2) points were added to the defendant's base level score, as the materials depicted prepubescent victims. In this case, Defendant does argue, but rather has admitted, to this specific characteristic.

Two (2) points were added to the base level score under USSG§2G2.2(b)(4), for material that portrays masochistic conduct or other depictions of violence. As the Pre-Sentence report alleges this assessment of points is based on a file ending in DD0C4, which depicts anal penetration. In no way is Defendant attempting to argue the lack of masochistic material; Rather, Defendant alleges that ALL material depicting minor children engaging in sexual acts of penetration is masochistic in nature. As a result, the assessment of two (2) is duplicative, as it is impossible to possess said material without it being masochistic in nature. Therefore, Defendant asks the court to set aside these 2 points when determining Defendant's sentence.

Four (4) points were added to the Defendant's base level score pursuant to USSG§2G2.2(b)(6), foe the use of a computer in the commission of the offense. Again, no way

is Defendant arguing that a computer was not used in committing the underlying offense. Rather, Defendant argues that this provision is out dated and antiquated. With the advancement of technology, computers have become involved in nearly every task performed by the average person; whether it be basic living tasks, banking, finance, entertainment….etc, nearly all tasks are reliant, or at the very least facilitated by the use of a computer. Further, the rationale behind such a penalty does not seem to relate to the offense, nor does it aggravate its commission. In no way did the use of a computer have a greater effect on the victims. Therefore Defendant requests that this Court to set aside the four (4) points that were added to the base level, under this provision.

Five (5) points were added to Defendant's base level pursuant to USSG§2G2.2(b)(7)(D), due to the number of images or videos found on Defendant's computer. Specifically, the pre-sentence report indicates that Five (5) points are to be added when there are 600 or more images. In this case, 490 videos were found on the Defendant's computer. The pre-sentence cites Application Note 6 of USSG2G2.2 when equating each video to 75 images, thus finding the Defendant in possession of 36,750 images. Defendant does not argue committing the ffense in question. However, Defendant asserts that this form of calculation is out dated and does not relate to the commission of the offense. Defendant understands that this provision is meant to serve as a method to protect victims of the offenses; however in this case it does not achieve its intended goal. It is the defense's argument that a victim may be harmed just as much from one video as one picture. Have a firm and rigid rule of equating each video with 75 pictures, is wholly prejudicial to the defendant, while offering no protection to any victim. For example, under this provision, a person possessing 599 images, each with a different victim, would not receive this penalty, regardless of their subject matter; however a person possession 8 videos of

the same victim would fall subject to enhancement. This type of rigid rule does not truly take into account the nature of the offense and serves and an unjust aggravating factor to this particular Defendant's sentence.

No other aggravating factors were found. Defendant then had two (2) points removed from the base level, as he accepted responsibility for the offense. Further, another point was removed for his assistance to law enforcement, leaving the Defendant with a total offense level of 32.

## IV. SENTENCING AND VARIANCE

Defendant now asks this Court, to consider all the required factors and grant a downward variance of the Defendant's suggested sentencing range. In support of this request, Defendant relies on the rationale used by the court in *U.S. v. Stall No.08-4064, Sixth Circuit Court of Appeals, 2009*. In *Stall,* the Defendant pleaded guilty to 2 counts of Possession of child pornography, pursuant to 18 U.S.C. § 2252(a)(4). *Id.* After a Pre-Sentence Report was performed, Defendant's sentencing guideline range was 57-71 months. *Id.* After a sentencing hearing, the court ordered the *Stall* to be incarcerated for a period of 1 day, followed by Ten (10) year period of community control. *Id.*

The facts of *Stall* are remarkably similar to that of the case in hand. In *Stall,* the defendant used peer to peer software to download multiple videos and images, depicting minors involved in sexual acts. *Stall* was immediately remorseful, assisted investigators, took responsibility for his actions and immediately began treatment with a psychologist. *Id.* Similarly in the instant matter, Defendant Dana Cain did all of these things.

> The Court in *Stall*, gave great deference to the treating psychologist:
>
> the district court agreed to hear testimony from Stall's psychologist, Dr. Stuart Bassman, who said that Stall took "refuge" in pornography (first adult, then child) because he was "isolated" and "lonely." Dr. Bassman explained that Stall suffered from undiagnosed and untreated depression at the time of his offense. For some people, according to Dr.

> Bassman, self-loathing manifests in playing video games or watching television for hours on end; for Stall, it manifested in the obsessive and compulsive browsing of the internet.
>
> Dr. Bassman's testimony then turned from the underlying reasons that Stall downloaded child pornography to the risk he would do so again. According to Dr. Bassman, it was unlikely that Stall would reoffend. First, Stall did not have a "criminal mind" or exhibit the qualities of a psychopath. Second, Stall was now being treated for depression, which Dr. Bassman said made him less likely to reoffend and more likely to respond to treatment for sexual compulsive disorder. Third, Stall was demonstrably committed to therapy, showing up on time, never missing an appointment, and expressing remorse for the role he played in the exploitation of children. And fourth, "internet sex offenders were significantly less likely to fail in the community than child molesters in terms of all types of recidivism."
>
> In Dr. Bassman's view, if Stall continued treatment and remained responsive, "the prognosis is positive" and Stall could "make a contribution to society." And though Dr. Bassman never claimed that therapy would be unavailable to Stall in the event that he was incarcerated, he did explain that a term of imprisonment could set back Stall's treatment by causing him to withdraw into himself. Put another way, the same treatment might be less effective in the prison context.

*Stall, at paragraph 9.*

In the instant matter, Defendant anticipates that this Court will hear similar testimony from his treating psychologist, Dr. Mraz. The Defendant immediately began treating with Dr. Mraz after his charges were initial brought at the state level. Further, after those charges were initially dismissed, Defendant continued his treatment. It is anticipated that Dr. Mraz will provide this court with insight into the psychological condition that led Dana to this type of behavior. Further, this court will hear of Dana's commitment to his treatment, his success during treatment and the opinion of Dr. Mraz, that Dana is very unlikely to re-offend, when receiving the proper treatment.

As a result of this anticipated testimony, the Defendant asks this court to take note of the Defendant's acceptance of responsibility and his commitment to rehabilitation, without court intervention. As in *Stahl ,*the Defendant here is asking the court to consider a lengthy term of

supervised release, rather than a term of incarceration in accordance with the guidelines outline in his Pre-Sentence Report:

> Explaining why a lengthy term of incarceration was unnecessary, the district court observed that Stall was committed to therapy, that treatment was more likely to be effective in a non-custodial context, and that the terms of supervised release adequately protected the public by ensuring that authorities would learn if Stall discontinued therapy. In this respect, the extent of the district court's variance is explained and can be distinguished from a case like United States v. Pugh, in which the Eleventh Circuit reversed a district court's one-day sentence for failing to include any term of supervised release. 515 F.3d 1179, 1202 (11th Cir.2008) ("Despite the district court's strong conviction that Pugh would not suffer from recidivism, the resulting sentence does not provide a sufficient mechanism to monitor Pugh for a lengthy time, and thus protect the public from any future crime, as contemplated in 18 U.S.C. § 3553(a)(2)(C).").
>
> There are reasons to question the district court's judgment. The district court could have more readily identified with the defendant because of his privileged background and the fact he attended college, and this comfort with the defendant could have informed its decision not to sentence him to a lengthy term of imprisonment, as advised by the Guidelines and recommended by the PSR. The court's suggestion that Stall is more amenable to treatment outside of prison because prison would make him depressed and withdrawn seems unlikely to be a winning argument for a defendant from different circumstances. See, e.g., United States v. Bailey, 488 F.3d 363, 369 (6th Cir.) (affirming a district court's discretion to reject this argument because "[a]ny defendant convicted of a crime could argue that his rehabilitation is in jeopardy because he is incarcerated with other people convicted of crimes."), cert. denied, --- U.S. ----, 128 S.Ct. 507, 169 L.Ed.2d 355 (2007).
>
> *Stahl at Paragraph 29 and 30.*

### V. **CONCLUSION**

In the instant matter, the Defendant has no prior criminal history, he has been gainfully employed for nearly all of his adult life, he expressed remorse for his actions, sympathy for his victims, accepted responsibility for his actions, began and excelled at psychological treatment and aided in the investigation against him.  For these reasons, Defendant now requests that this honorable court deviate from the recommended sentencing guidelines.  This deviation will allow Defendant to continue his treatment and will better aid in the Defendant's rehabilitation without demeaning the seriousness of his offense.

        Respectfully submitted,

        *Steve Albenze*
        Steve Albenze (0089558)
        **The Albenze Law Group LLC**
        124 Middle Ave. Suite 900
        Elyria, Ohio 44035
        (440) 523-1783
        (440) 284-1736 (fax)